*Not for Publication*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 12-10855-A-7

Michael S. Walker,

        Debtor.
_____/

Westamerica Bank,                        Adv. No. 12-1084

        Plaintiff,

   v.

Michael S. Walker,

        Defendant.
_____/

**MEMORANDUM DECISION**

This is an action under 11 U.S.C. § 727(a)(4)(A) to deny a debtor's discharge for making false oaths. The plaintiff is creditor Westamerica Bank; the defendant is debtor Michael S. Walker. This court previously granted partial summary judgment in favor of Westamerica on all issues except fraudulent intent. Civil Mins., July 24, 2013, ECF No. 72. The court then held trial on the remaining issue of Walker's intent.

The oath that forms the basis of a § 727(a)(4)(A) action must be made fraudulently. *See Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010). In other words, the debtor must have made the false oath knowing it was false and with the intention of deceiving creditors. *See id.* at 1198-99. Intent must be actual, not constructive, and it may be shown by circumstantial evidence or inferences drawn from the debtor's conduct. *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 64 (B.A.P. 9th Cir. 1999). Westamerica bears the burden of proving Walker's fraudulent intent by a preponderance of the evidence. *See* Fed. R. Bankr. P. 4005; *Retz*, 606 F.3d at 1197. For the following reasons, the court finds Westamerica has sustained its burden of proof.

First, the sheer number of misrepresentations and omissions in Walker's petition, schedules, and statements, as well as in his testimony at the meeting of creditors, support inferring his fraudulent intent. *See Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 878 (B.A.P. 9th Cir. 2007); *see also Wills*, 243 B.R. at 64 (providing that fraudulent intent may be found from "a pattern of falsity").

On the petition, Walker misrepresented his address at the time of filing as being in Bakersfield, California (his parents' address), when, in fact, he had been living in Austin, Texas. He repeated this

misrepresentation at the meeting of creditors when plainly asked, "Where did you live when you filed the bankruptcy?"

Walker also made omissions in his schedules and statements regarding the existence of his inter vivos revocable trust and of property that either he or his trust owned. This included his personal interests in three Bakersfield properties, as well as his trust's ownership interests in several companies.

Specifically, his trust owned partial interests in four companies, which, in turn, owned 30 other companies. Yet, only two of those four companies, MS Walker & Associates, LLC and OneDC, Inc. (which Walker referred to by its prior name, General Development & Construction, Inc.), were ever listed in the schedules and statements. The trust also owned a 1% interest in MS Walker Companies, Inc. and a 50% interest in WR Advisors, Inc., but these two companies were never disclosed in any manner. And although he and his trust had no direct stake in the other 30 companies, Walker failed to at least disclose his involvement in these businesses under question 18 of the statement of financial affairs or include their business names as his aliases (as he had done with MS Walker & Associates and OneDC).

And when asked at the meeting of creditors about his trust, Walker testified that the trust never held any significant assets, which was false. In actuality, the trust has held interests in four companies, which at one point were worth millions of dollars, and the trust has also held two properties in Bakersfield.

Second, the court finds that Walker's testimony explaining his various falsities is not credible due to a number of inconsistencies. As the trier of fact, the court is entitled to evaluate a witness's credibility and decide whether to believe his testimony or not.

*Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 731 (B.A.P. 9th Cir. 1999), *aff'd mem.* 5 F. App'x 743 (9th Cir. 2001). Here, it is appropriate to disregard Walker's testimony, such that it cannot negate the existing inference of fraudulent intent. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984).

The inconsistent testimony revolves primarily around Walker's companies. As to MS Walker & Associates, he testified at trial that his trust originally owned 93% of the company but that ownership was transferred to his three sons in 2010. However, this contradicts prior testimony at the meeting of creditors, in which Walker stated he presently owned 90% of the company (without mentioning his trust or the 2010 transfer). And Walker's trial testimony also conflicts with his verified discovery responses given in Westamerica's state court action against him, just two months prior to the bankruptcy, wherein he described himself as a "member of M.S. Walker & Associates."

When asked why he did not disclose his trust's interest in MS Walker Companies, Walker testified that he was told it was unnecessary to disclose companies that were worth nothing and going to be closed. Since MS Walker Companies supposedly "never did business," "had no value," and "was a dead company," Walker did not disclose it. Yet, he had presented MS Walker Companies in marketing materials as having "over 200 employees" and "annual revenues in excess of 100 million." Further, even if the company was worth nothing and soon-to-be closed, Walker did not explain why he chose to disclose MS Walker & Associates and OneDC, despite their similar zero value and imminent closure.

And when asked why he never included his trust's 50% interest in WR Advisors, Walker gave even more unreliable testimony. Originally, he testified that the interest was transferred to his former partner

Brian Rehkopf in 2011, so he and his trust no longer owned it. This response, however, raises further issues for Walker. First, if the transfer did occur, then it should have been disclosed as a transfer of property within two years of the bankruptcy under question 10 of the statement of financial affairs. But no such disclosure was made.

Additionally, notwithstanding the transfer, Walker should have disclosed ownership of WR Advisors based on his supposed belief of what had to be disclosed. He testified that although his trust transferred its 93% interest in MS Walker & Associates in 2010, he nevertheless needed to include the trust's former interest in the company, believing he had a duty to disclose all ownership interests held within the three years prior to the bankruptcy. If this was, in fact, his understanding of his duty, then Walker would have included the interest in WR Advisors as well, given that the trust owned that interest within the past three years. Yet, it was not disclosed.

Another flaw in his testimony, Walker's second answer to the same question about omitting WR Advisors was inconsistent with his original. When asked again why he omitted the interest in WR Advisors, Walker responded that he thought MS Walker & Associates owned it, rather than repeating that he had transferred it in 2011.

Third, Walker has maintained his story on paper over time--even when this § 727 action commenced. Although he amended his schedules and statements three times, the amendments only add creditors and business aliases (but even the list of aliases remains incomplete). His schedules and statements still do not disclose omitted assets or otherwise correct his acknowledged misrepresentations and omissions. Thus, Walker's "failure to amend the schedules promptly upon noting the discrepancy [further] supports the court's inference of

[fraudulent] intent." *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

Fourth, and finally, the court finds that Walker cannot rely on the advice of counsel as a defense. The advice-of-counsel "defense" is "a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent." *Maring v. PG Alaska Inv. Co. (In re Maring)*, 338 F. App'x 655, 658 (9th Cir. 2009). "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986).

But reliance on the advice of counsel must be in good faith; the debtor cannot rely on obviously erroneous advice. *See Retz*, 606 F.3d at 1199. In this case, the incorrect advice from Walker's attorney's assistant should have been evident to Walker. While the assistant George supposedly advised Walker that he did not need to disclose a multitude of information (e.g., his trust, his companies, etc.), Walker received a specific and stern warning from his attorney Frank Samples of the need for candor. At their first meeting, Samples cautioned Walker that his failure to "disclose everything" could "haunt" him. Since George's advice clearly conflicted with Samples's initial warning, this should have raised a red flag to Walker to question George's advice, especially given how much information was going to be omitted from the schedules and statements based on that advice. And Walker is someone who considers himself to be "sophisticated business man" and who had actual knowledge of his duty to disclose everything. Thus, he cannot now "play[ ] ostrich and bury[ ] his head deeply enough in the sand." *Id.*

Moreover, Walker is not entitled to rely on the advice-of-counsel defense because the pertinent facts were not disclosed to his counsel. *Id.* at 1202. Walker never made a full disclosure of his financial affairs, particularly regarding his network of companies, mentioning only 2 of the 34 companies in his initial questionnaire. Walker testified that he did disclose all of his companies to George over the phone and by sending him spreadsheets with all of the relevant information. But Walker's testimony is not credible. And there was no testimony from George or documentary evidence of the spreadsheets presented at trial that could corroborate Walker's testimony. Walker's words alone are simply not enough to persuade the court.

For each of these reasons, the court finds fraudulent intent. The plaintiff Westamerica Bank will prepare and lodge a judgment consistent with the findings and conclusions herein.

Dated: March 17, 2014

Fredrick E. Clement
United States Bankruptcy Judge

# Instructions to Clerk of Court
## Service List

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

    Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X_____ Other Persons Specified Below:

Patrick Kavanagh, Esq.
1331 L Street
Bakersfield, CA 93301

Steven Altman, Esq.
1127 12th St., #203
Modesto, CA 95354

Charles Doerksen, Esq.
2125 Kern Street, Suite 304
Fresno, CA 93721